UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DARIO CONCEPCION-PEREZ,<br><br>   Petitioner<br><br>v.<br><br>PETER PERRONCELLO<br><br>   Respondent | Civil Action No.<br>03cv10645-RWZ |

RETURN AND MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS

**SUMMARY STATEMENT**

Respondent Bureau of Immigration and Customs Enforcement ("ICE"), Department of Homeland Security ("DHS"),[1] moves to

---

[1] The Immigration and Naturalization Service of the United States Department of Justice was "abolished" by section 471 of the Homeland Security Act of 2002, Pub. L. 107-296, tit. IV, subtits. D, E, F, 116 Stat. 2135, 2192 (Nov. 25, 2002) ("HSA"). Most of the interior enforcement functions of the former INS were transferred to the Department of Homeland Security ("DHS"), Directorate of Border and Transportation Security, Bureau of Immigration and Customs Enforcement. These changes were effective March 1, 2003. HSA section 1512(c) provides that "pending civil actions shall continue notwithstanding the enactment of this Act or the transfer of an agency to the Department, and in such civil actions, proceedings shall be had, appeals taken, and judgments rendered and enforced in the same manner and with the same effect as if such enactment or transfer had not occurred." In addition, HSA section 1512(d) provides that "[r]eferences relating to an agency that is transferred to the Department in statutes, executive orders, rules, regulations, directives, or delegations of authority that precede such transfer or the effective date of this act shall be deemed to refer, as appropriate, to the Department, to its officers, employees, or agents, or to its corresponding organizational

dismiss this action because petitioner's detention is not unlawful.

Petitioner is an unadmitted "Mariel" Cuban subject to a final order of exclusion, and is subject to the exclusive custody-review procedures set out in 8 C.F.R. § 212.12 (2003)(Cuban cases reviewed at least yearly to determine whether alien can be released consistent with public safety). See generally Borrero v. Aljets, 325 F.3d 1003, 1005 (8th Cir. 2003).

As an alien who has never been admitted to the United States, petitioner's continuing detention is therefore not governed by the Supreme Court's "six-month rule" in Zadvydas v. Davis, et al., 121 S. Ct. 2491, 2505 (2001)(Court determining six months as a presumptively reasonable period of detention within

---

units or functions." Fed R. Civ. P. 25(d)(1) provides that: "When a public officer is a party to an action in his official capacity and . . . ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party. Proceedings following the substitution shall be in the name of the substituted party . . .". It is understood at present that the responsive successor official of the Department of Homeland Security in the instant action is Bruce Chadbourne, Interim Field Director for Detention and Removal, the Bureau of Immigration and Customs Enforcement in Boston, Massachusetts. Cf. Ciorba v. Ashcroft, --- F.3d --- (7th Cir. 2003) (2003 WL 1400572 n.1) (in direct petition for review to a Circuit Court of Appeals of a decision of the Executive Office for Immigration Review -- which is a component of the Department of Justice -- the Attorney General is the sole respondent).

which to allow the government to accomplish an alien's removal, and that, "for the sake of uniform administration in the federal courts, we recognize that period"). See generally Borrero v. Aljets, 325 F.3d at 1005 ("Because the detention of inadmissible aliens does not raise the same constitutional concerns as does the detention of admitted aliens, we conclude that Zadvydas's narrowing construction of [8 U.S.C.] § 1231(a)(6) does not limit the government's statutory authority to detain inadmissible aliens.").[2]

Accordingly, the petition should be dismissed for failure to state any claim of unlawful detention.

## CASE BACKGROUND AND FACTS

Petitioner is a native and citizen of Cuba who arrived at Key West, Florida, as part of the Cuban "Mariel Boatlift", on June 4, 1980. See 8 C.F.R. § 212.12(a) (defining "Mariel Cuban" as one arriving between April 15, 1980 and October 20, 1980). Petitioner was not admitted to the United States, but was "paroled" into the United States under the provisions of 8 U.S.C. § 1182(d)(5), and was re-settled to Chelsea, Massachusetts, to

---

[2] Even if petitioner were governed by the Zadvydas rule, he has been detained only since March 28, 2003, upon a final administrative order of exclusion, and therefore his detention is

live with his brother-in-law on November 20, 1980, pending processing of his asylum application.

On January 25, 1984, petitioner was convicted in Suffolk Superior Court for Assault With Intent to Rape, and sentenced to three years probation. On February 2, 1987, petitioner was convicted in Suffolk Superior Court on two counts of unlawful Distribution of Cocaine, and was sentenced to 6 to 8 years incarceration. The same date petitioner was also convicted of Possession of a Class B Controlled Substance With Intent to Distribute and was sentenced to 6 to 8 years incarceration, concurrent with the other drug trafficking sentences.

As a result of these convictions, the former Immigration and Naturalization Service revoked petitioner's parole, on June 8, 1987. Petitioner was again released from custody on October 31, 1990, in order for him to again reside in Chelsea, Massachusetts, this time with a woman identified as his wife. On May 3, 2000, petitioner was convicted in Suffolk Superior Court for Possession of a Class B Controlled Substance With Intent to Distribute, and was sentenced to a term of incarceration from 3 years to 3 years and one day.

---

well within the Supreme Court's "six-month rule" presumption of lawfulness.

Meanwhile, exclusion proceedings under former 8 U.S.C. § 1226 were commenced against petitioner by charging document dated December 6, 1989, alleging petitioner's inadmissibility to the United States under former 8 U.S.C. §§ 1182(a)(9), (20), and (23), for being an alien convicted of a crime involving moral turpitude, for being an alien immigrant not in possession of an immigrant visa, and for being an alien convicted of a controlled substance offense, respectively.

Exclusion proceedings resumed after a hiatus, and on March 3, 2003, an Immigration Judge determined that petitioner was excludable as charged, and denied all petitioner's applications for relief. Petitioner asserted at hearing that he would accept the order as final, but the Immigration Judge reserved appeal on behalf of petitioner, allowing him the opportunity to file an administrative appeal from the exclusion order to the Board of Immigration Appeals within 30 days, should he so desire. However, petitioner did not file an appeal, and the March 28, 2003, exclusion order of the Immigration Judge is the final administrative order.

Petitioner's case is now under administrative review for a determination as to petitioner's amenability fort release into the community, but no determination has yet been made. 8 C.F.R.

5

§ 212.12(g)(1) (review process commences approximately within three months of parole revocation). Discussions between the United States and Cuba are continuing regarding the repatriation of Cuban nationals. As of January 30, 2003, 1,625 Cubans have been returned to Cuba under agreements between the governments. See Attachment A.

ARGUMENT

I. PETITIONER IS LAWFULLY DETAINED PENDING EXECUTION OF HIS ORDER OF EXCLUSION.

Although petitioner asserts that his detention is unlawful under the Supreme Court's analysis in Zadvydas v. Davis, 533 U.S. 678 (2001), the majority of federal courts to consider the issue have already concluded that the statutory holding in Zadvydas does not apply to the petitioner's detention. See Borrero v. Aljets, 325 F.3d 1003 (8th Cir. 2003); Rios v. INS, 324 F.3d 296 (5th Cir. 2003); Hoyte-Mesa v. Ashcroft, 272 F.3d 989, 991 (7th Cir. 2001), cert. denied, 123 S. Ct. 185 (2002); Sierra v. INS, 258 F.3d 1213, 1218 (10th Cir.), cert. denied, 534 U.S. 1071 (2001).

Instead, the outcome of this appeal is controlled by Supreme Court precedent, reaffirmed in Zadvydas, including Shaughnessy v.

United States ex rel. Mezei, 345 U.S. 206 (1953), that distinguishes between aliens who have been admitted, and aliens, like petitioner, who were denied admission on arrival and have never entered the United States within the meaning of law. See Moise v. Bulger, 321 F.3d 1336, 1337 (11th Cir. 2003) (affirming Jeanty v. Bulger, 204 F. Supp.2d 1366 (S.D. Fla. 2002)); Garcia-Mir v. Meese, 788 F.2d 1446 (11th Cir.), cert. denied, 479 U.S. 889 (1986); Perez-Perez, 781 F.2d 1477; Garcia-Mir v. Smith, 766 F.2d 1478; Fernandez-Roque v. Smith, 734 F.2d 576 (11th Cir. 1984); Jean, 727 F.2d 957; see also Rios, 324 F.3d 296 (detention of non-admitted Mariel Cuban ordered removed governed by Gisbert v. Attorney General, 988 F.2d 1437 (5th Cir. 1993), not Zadvydas); Hoyte-Mesa, 272 F.3d 989 ("Mezei remains good law, and by extension so too does our holding in Carrera-Valdez[ v. Perryman, 211 F.3d 1046 (7th Cir. 2000)].").

In Zadvydas, the Supreme Court addressed the legality of post-order detention under section 241(a)(6) of the INA, 8 U.S.C. § 1231(a)(6), in the cases of two aliens previously admitted to lawful permanent resident status, but subsequently ordered deported. To avoid what it termed a serious constitutional question with respect to that specific class of aliens, the Court

construed the statute as authorizing detention for a period reasonably necessary to remove such an alien, presumptively six months absent evidence to show that deportation is likely to occur in the reasonably foreseeable future beyond that time. Id. at 701.

The Court, however, did not disturb its earlier decision in Mezei, 345 U.S. 206, in which it held that detention of a non-admitted, excludable alien did not implicate any statutory or constitutional right, even if that detention was prolonged, because no country would accept the alien. Id. at 215-16.

In explaining its decision in Zadvydas, and addressing the Government's arguments, the Supreme Court carefully distinguished between aliens who had "entered" or been admitted to the United States, but were subsequently ordered removed (i.e., deportable aliens), and aliens, like petitioner, who have never gained initial admission to this country (i.e., non-admitted, excludable aliens "who are 'treated,' for constitutional purposes, 'as if stopped at the border'"). Id. at 682, 693 (quoting Mezei, 345 U.S. at 213, 215). The Court carefully explained that whether an alien is deportable or removable after an admission or entry, as opposed to an alien who is inspected and excluded or denied entry

on arrival, is a fact "that ma[kes] all the difference." Id. at 693-94 (reaffirming rule that arrival and detention or parole of inadmissible alien does not as a matter of law constitute an entry into the territorial United States, and does "not affect his legal or constitutional status," or bring such alien within the "Fifth Amendment's protections") (internal punctuation omitted). "The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." Id. Accordingly, "aliens who have not yet gained initial admission to this country would present a very different question." Id. at 682. See generally Borrero v. Aljets, 325 F.3d at 1005 ("Because the detention of inadmissible aliens does not raise the same constitutional concerns as does the detention of admitted aliens, we conclude that Zadvydas's narrowing construction of [8 U.S.C.] § 1231(a)(6) does not limit the government's statutory authority to detain inadmissible aliens.").

Petitioner's custody is periodically reviewed under a regulatory scheme of the Attorney General, at 8 C.F.R. § 212.12 (2003), by a Review Panel that determines whether petitioner may be released into the community under certain public safety standards set out in those regulations. Petitioner's initial

review is now underway, but has not yet been completed. The regulations also provide for discretionary interviews by the Review panel of a detainee.

Accordingly, because petitioner is an unadmitted alien subject to a final order of exclusion, petitioner fails to state a claim of unlawful detention, and the petition should be dismissed.

## CONCLUSION

For all the reasons set out above, the Court should dismiss this action, and deny all other relief sought.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: _____
FRANK CROWLEY
Special Assistant U.S. Attorney
Department of Homeland Security
P.O. Box 8728
J.F.K. Station
Boston, MA 02114
(617) 565-2415

**ATTACHMENT A**



United States Department of State

Washington, D.C. 20520

## DECLARATION OF KEVIN WHITAKER

I, Kevin Whitaker, declare and say:

1. I am the Coordinator, Office of Cuban Affairs, in the Department of State. I have held this position since September, 2002. I have been employed as a foreign service officer by the Department of State since 1979. The Office of Cuban Affairs is the office within the Department of State responsible for coordinating U.S. relations with Cuba, including migration matters. During the course of my responsibilities, I have become familiar with all aspects of the U.S. government's relations with Cuba, and have participated in discussions with Cuban government officials on migration and other matters affecting bilateral relations between the two countries. The following is based on my personal knowledge, and on information available to me as part of my official duties. As used in this declaration, the term "excludable" includes aliens who have been convicted of serious crimes and ordered excluded, deported or removed from the United States. I understand that copies of this declaration may be filed by the U.S. Government in different cases.

2. For almost two decades, the United States has been discussing with Cuban authorities the issue of the return of excludable Cubans. In 1984, the United States and Cuba reached an agreement for the return of 2,746 criminal Cubans who had arrived in the United States during the 1980 Mariel outflow. As of January 30, 2003, 1,625 of those Cubans named on the 1984 list have been returned to Cuba. At the time the 1984 agreement was reached, it was clear that the names did not constitute a definitive list and that additional excludables would be identified in the future.

3. Over the past several years, U.S. officials have met periodically with the Government of Cuba to discuss pending migration matters, including the return of Cuban nationals who have been convicted of serious crimes and ordered excluded, deported or removed from the United States.

4. In an effort to normalize the migration relationship between the two countries, the United States and Cuba concluded further agreements on September 9, 1994 and May 2, 1995, respectively, to promote safe, legal and orderly migration and to deter dangerous boat voyages across the Florida Straits. In addition, the September 1994 agreement expressly stated that the United States and Cuba "agreed to continue to discuss the return of Cuban nationals excludable from the United States."

5. Delegations from the two countries have continued to meet biannually to discuss migration issues, including this subject. The latest round of talks took place on December 17, 2002 in Havana, Cuba. The U.S. delegation is led by the Department of State and includes officials of the Immigration and Naturalization Service. I cannot go into the substance of these sensitive diplomatic exchanges in a public forum. I can confirm that the return of Cuban nationals excludable from the United States for conviction of serious crimes and ordered excluded, deported or removed remains under discussion between the two governments.

I declare under penalty of perjury that the above declaration is true and correct.

\[signature\]

Kevin Whitaker
Coordinator
Office of Cuban Affairs
Department of State

Executed at Washington, D.C.
February 20, 2003

**CERTIFICATE OF SERVICE**

I hereby certify that I caused true copy of the above document to be served upon pro se petitioner by mail on June 10, 2003.

_____
FRANK CROWLEY
Special Assistant U.S. Attorney
Department of Homeland Security
P.O. Box 8728
J.F.K. Station
Boston, MA 02114